UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS, SAN ANTONIO DIVISION

| | | |
|---|---|---|
| REBECCA MARIE KING | § | |
| | § | |
| Plaintiff | § | |
| | § | |
| vs. | § | CIVIL ACTION NO. 5:21-cv-245 |
| | § | |
| NORTH EAST INDEPENDENT SCHOOL | § | |
| DISTRICT and SEAN A. MAIKA, Ed. D | § | |
| | § | |
| Defendants. | § | |

### PLAINTIFF'S ORIGINAL COMPLAINT

Comes now Plaintiff, Rebecca Marie King (hereinafter, "Plaintiff,") by and through counsel, and in support of her claims against the above-named Defendants, North East Independent School District and Sean A. Maika, Ed.D. respectfully states:

**I.**

### NATURE OF THE ACTION

This is an employment discrimination case brought by Plaintiff against Defendant North East Independent School District and Defendant Sean A. Maika, Ed.D, under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 1981, and Chapter 21 of the Texas Labor Code.

**II.**

### PARTIES

1. Plaintiff, Rebecca Marie King is a resident of Texas.

2. Defendant NEISD is located in Bexar County, Texas. It may be served with process by agreement through its counsel Ricardo R. Lopez, Schulman, Lopez, Hoffer & Adelstein, LLP, 845 Proton Rd., San Antonio, Texas 78258.

3. Defendant Sean A Mika is located in Bexar County, Texas. He may be served with process by agreement through his counsel Ricardo R. Lopez, Schulman, Lopez, Hoffer & Adelstein, LLP, 845 Proton Rd., San Antonio, Texas 78258.

## III.

## JURISDICTION AND VENUE

4. This Court has jurisdiction under 28 U.S.C. §1331 and §1343 because this action presents federal questions. The Court also has supplemental jurisdiction to entertain Plaintiff's claims brought under Texas law. Venue is proper pursuant to 28 U.S.C. §1391 because the events made the basis of this lawsuit occurred within the geographical boundaries of the United States District Court for the Western District of Texas, San Antonio Division.

## IV.

## FACTS

5. Plaintiff is Mexican American.

6. Prior to the events in this case, Plaintiff was employed by two large Texas school districts during her 28-year career in education, most recently she worked for 12-years with Defendant NEISD.

7. Plaintiff worked for a total of four Superintendents in her career until the incidents at which time she was working for Defendant Maika.

8. Plaintiff had a history of twenty-eight (28) excellent evaluations before she started working for Defendant Maika.

9. Defendant Maika was the fifth Superintendent that Plaintiff worked for in her career.

10. Beginning in 2008, Plaintiff was employed by Defendant NEISD.

11. Plaintiff's first assignment with Defendant NEISD was as the Administrative Assistant to the Associate Superintendent of Operations.

12. In February 2011, Plaintiff was promoted to Executive Associate to the Superintendent of Defendant NEISD and as such became a member of the Superintendent's Executive Staff.

13. Plaintiff's last annual salary for the Executive Associate position was $81,913.00 (or $39.38 per hour based on a 40-hour work week.)

14. In her position as Executive Associate, Plaintiff was responsible for the management of multiple employees and had high-level responsibilities, including regular and frequent communications with members of the Board of Trustees on behalf of the Superintendent.

15. On or about May 6, 2019, Defendant Sean A. Maika, Ed.D. was appointed to the position of Interim Superintendent.   Defendant Maika is Caucasian.

16. As Interim Superintendent, Defendant. Maika assured Plaintiff that her job was secure and there would be no changes.   Defendant Maika also assured her it would be "business as usual."

17. On or about September 25, 2019, Defendant NEISD officially appointed Defendant Maika to serve as Superintendent.

18. After the official appointment of Defendant Maika as Superintendent of Defendant NEISD, he began to bully. and to play mind games with Plaintiff.   For example, he would not talk to Plaintiff or acknowledge Plaintiff.   He told Plaintiff that no one on the executive staff ever

liked her. Defendant Maika told Plaintiff if she stayed, he would have to record all of their conversations and accused her of being a liar who could not be trusted.

19. When Plaintiff stayed instead of retiring or quitting, Defendant. Maika demoted her to a lower paying job in Family Support Services and stripped Plaintiff of her senior level executive responsibilities.

20. The reason for the demotion given by Defendant Maika was that a Board meeting agenda was not timely posted. This task was one of Peggy Turner assignments. Peggy Turner was a subordinate of Plaintiff's, and Plaintiff was unaware that Ms. Turner had not completed the task. Ms. Turner, a Caucasian, was not disciplined for failure to timely complete her assignment.

21. Plaintiff was replaced in the Executive Associate to the Superintendent position by her subordinate, Peggy Turner, a Caucasian. As Peggy Turner's supervisor, Plaintiff was aware that Ms. Turner's performance was at times poor and Plaintiff made efforts to assist Ms. Turner in improving her performance. Peggy Turner was not as well-qualified as Plaintiff to serve in the Executive Associate position as Peggy Turner had no comparable experience and Plaintiff had filled the Executive Associate position continuously since 2011.

22. The demotion of Plaintiff left only white people working in Defendant Maika's Office.

23. The demoted position in Family Support Services reduced Plaintiff's hourly pay to $21.04 per hour effective at the end of the 2019-2020 school year.

24. The demoted position was in another building several miles away from the co-workers with whom Plaintiff was familiar and comfortable, and she was often assigned to work in isolation.

25. Plaintiff asked to be allowed to work in the administration building near her colleges. Defendant Maika told Plaintiff there was no room for her there, which was not true.

26. Plaintiff frequently worked entirely by herself and her high-level administrative skills were not applicable to the demoted position. It was obvious that Defendant Maika was ratcheting up the pressure on Plaintiff to retire or resign by this punitive and irrational demotion.

27. Plaintiff asked Defendant Maika if the Board of Trustees was aware of his treatment and actions toward her. Defendant Maika stated that they were aware and that they were fine with it.

28. On March 6, 2020, Defendants terminated Plaintiff from the demoted position in Family Support Services based in part upon a false allegation that she abused Amazon ordering privileges during the previous school year. The truth which Plaintiff demonstrated was that Amazon had confused a personal order Plaintiff made from her NEISD office with an order for Defendant NEISD.

29. Such errors had occurred in the past. Based upon past precedent, a billing error of that sort was not the subject of discipline at all, but instead was corrected administratively.

30. Defendants also falsely accused Plaintiff of failing to reimburse the Defendant NEISD for American Express charges made by Plaintiff during a trip to a School Board Convention during the previous year. In fact, Plaintiff turned in all of her receipts to Peggy Turner upon Plaintiff's return from the convention. Peggy Turner was responsible for reconciling the monthly American Express charges. Ms. Turner's duties specifically included informing Plaintiff and others of any charges that might be personal and might therefore need to be reimbursed to Defendant NEISD. Peggy Turner failed to provide that information to Plaintiff even though she

made several attempts to obtain it.  Peggy Turner was not disciplined for failing to perform her job.

31. Eventually, Plaintiff obtained employment at the clerical level with another school district.

32. As a result of Defendants' illegal conduct, Plaintiff has suffered from severe emotional distress with substantial physical consequences including shingles, trouble sleeping, headaches, and depression and anxiety.

V.

## LEGAL CLAIMS

33. Plaintiff adopts and incorporates herein by reference all preceding paragraphs. All administrative prerequisites to the filing of this lawsuit have been exhausted.

34. Defendants took discriminatory actions against Plaintiff in order to achieve a completely white staff in the Superintendent's office and to promote a less qualified Caucasian person into Plaintiff's position.

35. Defendants also discriminated against Plaintiff by demoting Plaintiff, cutting Plaintiff's pay, and placing Plaintiff in a far less favorable assignment.

36. Defendants also discriminated against Plaintiff by subjecting Plaintiff to disparate disciplinary action and terminating Plaintiff's employment based upon false, trumped up charges.

37. The unlawful employment practices complained of herein were done maliciously or with reckless indifference to Plaintiff's state and federal civil rights.

**B.**
**Discrimination in Violation**
**Chapter 21 of the Texas Labor Code**

38. Plaintiff adopts and incorporates herein by reference all preceding paragraphs.

39. This count is alleged against Defendant NEISD, Plaintiff's employer.

40. As alleged above, Defendant NEISD discriminated against Plaintiff in violation of Chapter 21 of the Texas Labor Code based upon race, color, and national origin and in order to favor a less qualified white person.

**C.**
**Discrimination in Violation of**
**42 U.S.C. § 1981**

41. Plaintiff adopts and incorporates herein by reference all preceding paragraphs.

42. This count is alleged against Defendant Maika who at all times acted under color of state law interfering with Plaintiff's rights to make and enforce her contract with Defendant NEISD. As alleged above, Defendant Maika discriminated against Plaintiff in violation of 42 U.S.C. § 1981 based upon race and color, and in order to favor a less qualified white person.

**D.**

**JURY DEMAND**

**43.** The Plaintiff herein hereby demands a trial by jury on all issues in this action.

# PRAYER

Plaintiff respectfully prays that the Court enter Judgment in her favor and against Defendant, and award Plaintiff the following:

a) Actual damages plus interest including, but not limited to, wage loss, loss of employment opportunities and lost benefits, past and future, as allowed by law;

b) Compensatory damages arising from emotional distress, loss of enjoyment of life, and other nonpecuniary losses, past and future, as allowed by law;

c) All damages and relief as allowed under Title VII of the Civil Rights Act of 1964, as amended;

d) All damages and relief as allowed under Chapter 21 of the Texas Labor Code;

e) Attorney's fees, costs and injunctive relief necessary to eradicate the effects of its unlawful employment practices in the form of reinstatement, or alternatively, front pay, having Plaintiff's employment record cleared of negative and false information and any other relief as allowed under Title VII of the Civil Rights Act of 1964, as amended, the Pregnancy Discrimination Act and as otherwise allowed by law;

f) Punitive damages as allowed by law;

g) Prejudgment interest as allowed by law;

h) Post-judgment interest as allowed by law;

i) Attorney's fees as allowed by law;

j) Court costs and expenses as allowed by law;

k) All other relief, both special and general, at law and in equity, to which Plaintiff may be justly entitled.

Respectfully Submitted,

*/s/ John E. Schulman*
John E. Schulman, Esq.
State Bar No. 17833500
jschulman@schulmanlaw.com
Margaret K. Schulman, Esq.
State Bar No. 17833900
mschulman@schulmanlaw.com
**THE SCHULMAN LAW FIRM, P.C.**
6440 N. Central Expressway, Suite 210
Dallas, TX 75206
Tel: 214-361-2580
Fax: 214-361-6580
**ATTORNEYS FOR PLAINTIFF**